SHANNON, Judge.
Appellants, plaintiffs and intervenors below, forty-seven in number, all reside in an area south of the city of Lakeland, near Banana Lake. Plaintiff-appellants filed a complaint on February 5, 1957 charging that the City of Lakeland was causing contaminated effluent from a sewage disposal plant to be emptied into a canal which flows into an old phosphate spoil pit and thence into Banana Lake; that this pollution was causing foul odors in the area, and in addition had killed off the surface minnows so that the water had become densely infested with mosquito larvae, which were maturing and populating the surrounding area with great hordes of the adult pests. The complaint prayed for temporary and permanent injunctive relief, and in addition most of the plaintiffs sought damages. For the purpose of setting out damages, those plaintiffs were divided into three “classes”; 1) residents and householders, 2) citrus growers, and 3) livestock and poultry producers.
Attached to the complaint was a copy of the final decree in the case of State ex rel. Harris v. City of Lakeland, entered May 9, 1941. It appears that most of the parties to that case are also parties to the present action, or were predecessors in title, and the subject matter was identical, In the previous case the defendant was permanently enjoined from casting sewage into the canal and lake. The Harris case was before the Supreme Court twice, but both times prior to the final decree granting the injunction, 141 Fla. 795, 193 So. 826, and 143 Fla. 761, 197 So. 470.
Testimony was taken as to the injunc-tive portion of the complaint, and it was shown that a public nuisance did in fact exist in the area, although defendant presented evidence showing that it was presently engaged in improving its sewer sys *773 tem so that when completed the nuisance would be abated.
The final decree ordered the defendant to take such steps as required to remove the hyacinths growing over the waters in question, and to eliminate the mosquito larvae therein until such time as the improved sewage disposal system is in operation. As to the damages sought by plaintiffs, it was found that each claim was distinct and separate, depending on different facts and subject to different defenses. It was further found that each plaintiff had no actionable interest in the claims of the other plaintiffs, and the claims were not properly brought as a class suit. The claims for damages were therefore dismissed without prejudice to the plaintiffs to bring appropriate individual actions at law, and from that portion of the decree plaintiffs appeal.
Appellants base their argument for reversal squarely on the principle that once equity takes jurisdiction it will do complete justice, although it involves granting what would ordinarily be legal relief. While this rule is a well established maxim of equity, 12 Fla.Jur., Equity, § 43, the general law is to the effect that the rule is permissive, not mandatory, and will not be applied where it would impair fundamental rights of parties, or do violence to the basic doctrines of pleading. In 30 C.J.S. Equity § 67, the following statement is found:
“The rule is not an inflexible one which a court of equity is bound to follow in every case that comes before it, and it is permissive rather than peremtory in character. The extending of the jurisdiction of equity so as to include all the points in controversy rests largely in the sound discretion of the chancellor * *
And in § 72, same reference, dealing with our more specific question of retaining jurisdiction to award damages, it is said:
“ * * * Retention of jurisdiction to award damages is, however, matter of discretion rather than right, and courts of equity retaining jurisdiction to do complete justice award damages only when a good cause of action has been made out under established principles of jurisprudence.”
We have found one statement by our Supreme Court which, taken out of context, would seem to make the rule mandatory in Florida, rather than permissive. In Lorenz v. City of Hollywood, 1940, 144 Fla. 324, 198 So. 17, 19, after reciting the rule that equity will not enter an incomplete decree, the following sentence occurs:
“A part of the controversy should not be remitted to the court of law.”
However, an examination of the Lorenz case reveals that, along with a large majority of the cases which refer to the rule, it is an affirmance of a chancellor in his action of retaining jurisdiction to settle further questions which would ordinarily be at law. The statement need not be construed as being broader than necessary to cover the situation then before the court, while the question in the instant case is just the reverse, involving, as it does, the propriety of the chancellor’s action in refusing to retain jurisdiction for the award of money damages.
It will also be observed that the above quoted sentence is taken almost verbatim from 19 Amjur., Equity, § 127, a citation immediately preceding it in the Lorenz case. A reading of this entire section again discloses the qualification to the general rule in the last paragraph.
“The avoidance of a multiplicity of suits or circuity of action is assigned as a reason for this practice. The principle is not, however, inflexible. The discretion of the chancellor is determinative, to some extent at any rate, of how far the principle will be applied. The rule is permissive rather than peremptory.”
We therefore hold that the granting of incidental legal relief, once equity has *774 assumed jurisdiction, is not a matter of right, but may, if in the sound discretion of the chancellor the particular situation warrants, be left to a court of law.
Applying this principle, together with the rule that the joinder of parties in equity is largely a matter of discretion with the court, Milton v. City of Marianna, 1932, 107 Fla. 251, 144 So. 400, and the fact that multifariousness is generally a question of convenience subject to no inflexible rule, Franklin Life Ins. Co. v. Tharpe, 1935, 118 Fla. 832, 160 So. 199; Williams v. Ricou, 1940, 143 Fla. 360, 196 So. 667; 30 C.J.S. Equity § 233, to the facts of the present case, leads us to the conclusion that the chancellor was well within the perimeter of his discretion in relegating the many plaintiffs, with their various types of damages, to individual actions at law. See Bajorek v. Kurtz, 1952, 335 Mich. 58, 55 N.W.2d 727.
This conclusion is strengthened when it is recalled that plaintiffs obtained the jurisdiction of equity on a somewhat questionable claim in the first instance, as there was already a valid and subsisting injunctive decree covering the identical subject matter.
Appellee has raised the further question of whether the plaintiffs may, in their private capacity, bring such an action, alleging the condition complained of constitutes a public nuisance, and that plaintiffs, not suffering an injury differing in kind from the public at large may not maintain such a suit, Page v. Niagara Chemical Division, etc., Fla.1953, 68 So.2d 382; Wedner v. Escambia Chemical Corporation, Fla.1958, 102 So.2d 631. However, the chancellor, while taking note of this argument in his final decree, apparently rejected it, as he did enter those certain mandatory injunctive orders previously referred to, and his dismissal of plaintiffs’ damage claims was without prejudice to bring individual actions at law. Inasmuch as the appellee has filed no cross-assignments of error we cannot consider this question.
Affirmed.
KANNER, C. J., and SMITH, FRANK A., Associate Judge, concur.